**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BELARMINO AMAYA, et. al, <br><br> Plaintiffs, <br><br> v. <br><br><br> STATE OF NEW JERSEY, et. al, <br><br> Defendants. | Civ. No. 10-0915 (DRD) <br><br> **O P I N I O N** |

*Appearances by:*

CAVANAGH & ASSOCIATES, P.C.
by:  Glenn L. Cavanaugh, Esq.
727 Raritan Road, Suite 202A
Clark, New Jersey 07066

J.H. BARR & ASSOCIATES, L.L.C.
by:  Jon Henry Barr, Esq.
21 Brant Avenue
Clark, New Jersey 07066

 *Attorneys for Plaintiff RHK*

PAULA T. DOW, ATTORNEY GENERAL OF NEW JERSEY
by:  Jennifer S. Hsia, Deputy Attorney General and
Steven A. Yomtov, Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112

 *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

Original Plaintiffs, Belarmino Amaya and Carlos Mejia, defendants in a State money laundering criminal case, instituted this 42 U.S.C. § 1983 action against Paula Dow, New Jersey Attorney General, and others, seeking to enjoin prosecution of the money laundering statutes, N.J.S.A. 2C:21-25(a) and N.J.S.A. 2C:21-26 (the "Statutes"), against them on the grounds that the Statutes are unconstitutionally vague and overbroad, they impose an impermissible evidentiary presumption that shifts the burden of proof, and they violate the Constitution's Commerce Clause. An additional plaintiff, RHK, an anonymous individual, filed an amended complaint challenging the constitutionality of the Statutes on the same grounds.

The court dismissed the Amaya and Mejia actions on Younger v. Harris, 401 U.S. 37 (1971) grounds. Defendants moved to dismiss RHK's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I.

### II.  BACKGROUND

On or about January 23, 2009, Amaya and Mejia were traveling in a motor vehicle on the New Jersey Turnpike when they were stopped and ultimately arrested by State Police because they were carrying $1,240,040.00 in United States currency. Amaya and Mejia were charged with money laundering in violation of the Statutes. They subsequently filed a complaint in this court against the State of New Jersey; Paula Dow, Attorney General of the State of New Jersey; Philip Mogavero, an attorney for the State of New Jersey; Sherri Wells, an investigator for the State of New Jersey; State Police Officers Martin Farrell, Cesar Huaman, and Chad Kaspar; and various John Doe defendants, pursuant to 42 U.S.C. §§ 1983 and 1988, alleging that their arrest violates their First, Fifth, Sixth, and Fourteenth Amendment rights.

An Amended Verified Complaint (the "Complaint") was later filed by an additional Plaintiff, RHK, who is attempting to proceed anonymously because he allegedly fears being arrested and prosecuted for violation of the Statutes if he reveals his identity.[1]  Amaya's and Mejia's claims were voluntarily dismissed.  RHK, who is the only remaining plaintiff, seeks a declaratory judgment that the Statutes are unconstitutional and a permanent injunction enjoining Defendants from prosecuting RHK pursuant to the Statutes.  Defendants filed a motion to dismiss pursuant to Rule 12(b)(6), stating that RHK lacks standing to pursue his claims and that Defendants Mogavero, Wells, Farrell, Huaman, and Kaspar should be dismissed with prejudice because RHK has not alleged any facts to support a claim against those Defendants.

RHK alleges the following:  He is a self-employed businessman and financial entrepreneur.  He routinely provides his clients with currency pickup, storage, and transportation services.  Such services are contracted for and conducted in a confidential manner, with no documentation exchanged between RHK and his clients.  RHK does not inquire as to the source of the currency or its intended use.  The services may involve transportation wholly within New Jersey, wholly outside of New Jersey, or from New Jersey to other states and vice-versa.  He does not provide such services to a client if he is informed or acquires knowledge that the currency at issue was derived from or intended to be used for any illegal activity.  If he were ever stopped by police while conducting a currency pickup or transfer he would be arrested and prosecuted under the Statutes.  (Compl. ¶¶ 52-60).  Thus, he argues, the Statutes infringe upon his ability to conduct his currency transportation business.  Out of fear of prosecution, he has suspended his currency transportation business.  (Pl.'s Br. 13).

N.J.S.A. 2C:21-25(a) states, in pertinent part:

---

[1] Although the Court does not know RHK's gender, for simplicity's sake, RHK will be referred to herein with the pronouns "he" and "his".

3

"A person is guilty of a crime if the person . . . [t]ansports or possesses property known or which a reasonable person would believe to be derived from criminal activity."

N.J.S.A. 2C:21-26 states, in pertinent part:

> For the purposes of [2C:21-25a], the requisite knowledge may be inferred where the property is transported or possessed in a fashion inconsistent with the ordinary or usual means of transportation of possession of such property and where the property is discovered in the absence of any documentation or other indicia of legitimate origin or right to such property.

RHK claims that the Statutes infringe upon his constitutional rights in the following ways:

1. N.J.S.A. 2C:21-26 violates the Fifth and Fourteenth Amendments because it is vague and overbroad;

2. N.J.S.A. 2C:21-26 violates the Fifth and Fourteenth Amendments because it creates and imposes an illegal and impermissible evidentiary presumption which shifts the burden of proof, permits conviction on a standard of proof less than "beyond a reasonable doubt", and compels the accused to surrender his right against self-incrimination;

3. N.J.S.A. 2C:21-26 violates Article 1, Section 8, Clause 3 of the United States Constitution (the "Commerce Clause") because it seeks to apply New Jersey criminal law to regulate commercial transactions that originate or terminate wholly outside the State of New Jersey, in a manner that constitutes an undue burden on interstate commerce.[2]

---

[2] RHK also makes vague allegations that N.J.S.A. 2C:21-26 violates the Sixth Amendment; and that N.J.S.A. 2C:21-25(a) violates the Fifth, Sixth, and Fourteenth Amendments, as well as the Commerce Clause, but such allegations are not supported in RHK's brief and will therefore be disregarded.

4

## II.  DISCUSSION

**A.  Standard of Review**: In assessing the parties' arguments, the Court must apply the standard of review applicable to requests for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  That rule permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that

5

discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

**B. Standing:** Defendants assert that RHK lacks standing to pursue the present claim. The requirements for Article III constitutional standing are as follows: (1) The plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) There must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before court; and (3) It must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Society Hill Towers Owners' Association v. Rendell, 210 F.3d 168, 175-76 (3rd Cir. 2000).

Defendants argue that RHK fails to satisfy the first prong of the above standard because (1) he has not suffered an invasion of a legally protected interest, and (2) his injury is hypothetical and conjectural rather than actual or imminent.

6

That argument, however, is in conflict with Revell v. Port Authority of New York and New Jersey, 321 Fed. Appx. 113 (3rd Cir. 2009). That case arose from the arrest of Gregg Revell, an out-of-state traveler who was carrying a firearm and hollow-point bullets in his luggage at Newark Liberty International Airport in violation of certain New Jersey statutes which prohibit unlicensed possession of handguns and hollow-point bullets. Revell at 115. In contrast to the New Jersey statutes, federal law "permits the transportation of firearms and ammunition through a state, even if possession of the firearms in that state would otherwise be illegal, so long as: 1) the firearms and ammunition are lawful in both the states of embarkation and destination; and 2) neither the firearms nor ammunition are readily accessible during transportation." Id. On that basis, Revell sued the Port Authority and arresting officer in federal court. The Association of New Jersey Rifle & Pistol Clubs, Inc. (the "Association") "also filed a complaint seeking an injunction enjoining the Port Authority from enforcing the New Jersey Statutes against the Association's nonresident members who desire to travel through New Jersey with their firearms and ammunition." Id.

The court ruled that the Association had validly pled an injury in fact that was both concrete and imminent. Id. At 117. As the court stated, "[i]f it is Port Authority policy to arrest persons who are entitled to transport a firearm and ammunition pursuant to [federal law], and the Association's members are currently refraining from so transporting due to that policy, standing . . . exists." The threat of arrest met the requirement that the injury be concrete and imminent.

In the present case, the arrests of Amaya and Mejia demonstrate that it is State Police policy to arrest people found carrying large amounts of currency in violation of the Statutes. Thus, if Revell is refraining from transporting currency out of fear of being arrested under an unconstitutional statute, as he alleges, his injury is both concrete and imminent under the ruling

7

in Revell. In this case, as in Revell, the threat of arrest meets the requirement that the injury be concrete and imminent.

However, RHK's argument that he has suffered an invasion of a legally protected interest depends on the constitutionality of the Statutes. If the Statutes are constitutional, there is no invasion of a legally protected interest and, consequently, no standing. On the other hand, if the Statutes are unconstitutional, standing exists. Thus, if it were necessary to proceed with an anonymous plaintiff, it would be necessary to evaluate the constitutionality of the Statutes in order to determine whether RHK has standing.

There are grounds on which RHK could argue that N.J.S.A. 2C:21-26 is, on its face, unconstitutionally vague. A vagueness challenge may invalidate a criminal statute on two independent grounds: (1) it may fail to provide adequate notice that will enable ordinary people to understand what conduct it prohibits; and (2) it may authorize or encourage arbitrary and discriminatory enforcement. City of Chicago v. Morales, 527 U.S. 41, 56 (1999). A law fails to meet the requirements of due process "'if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . .'" Id. (citation omitted).

N.J.S.A. 2C:21-26 imputes knowledge of the criminal origin of currency being transported when such currency is "transported or possessed in a fashion inconsistent with the ordinary or usual means of transportation or possession of such property" and in the absence of documentation indicating its legitimate origin.

RHK contends that the statute fails to offer any insight as to what the "ordinary or usual means of transportation" might be, thereby leaving ordinary people unable to understand what conduct it prohibits. For example, the ordinary means of transporting $5,000 is probably very different from the ordinary means of transporting $1,000,000 but the statute makes no such

8

distinctions and provides no examples of what is permissible or prohibited for one sum or another.

As stated above, RHK's allegations are sufficiently specific to support the notion that he has suffered an injury (the threat of arrest) because, if the Statutes are vague and deprive him of the presumption of innocence, he might be unable to comply with the guidelines of the Statutes. Consequently, RHK has standing to pursue his claim.[3]  It is worth noting, however, that RHK has a continued burden to show standing. He cannot rest on his pleadings. Revell at 117 n. 2. If it turns out, through the course of discovery, that RHK cannot show that the Statutes are unconstitutional as applied to him, his "standing will evaporate quickly." Id.

**C.  RHK's Interest in Proceeding Anonymously:** There is a factor in this case that was not present in Revell – RHK's anonymity. There is a presumption that parties' identities are public information. Doe v. Hartford Life and Accident Insurance Co., 237 F.R.D. 545, 549 (D.N.J. 2006). Where a party wishes to conceal his or her identity, such party may file a motion to proceed anonymously. See Id. at 547. Although no such motion was filed here, and although neither party fully addressed this issue in their briefs, the court finds it necessary to resolve this issue at this time.

It is within a district court's discretion to determine when a party may proceed anonymously. Id. at 548. In making such a determination, "the strong interest in ensuring public access to judicial proceedings is balanced against the private interests favoring anonymity." Id. at 549. In general, "the public's right to access should always prevail unless the party requesting anonymity 'demonstrates . . . interests in privacy or security [sufficient to] justify [anonymity].'" Id. (citations omitted).

---

[3] Given this determination it is unnecessary to consider RHK's other constitutional challenges at this time.

This court has applied a multi-factored test to determine whether "'the presumption that parties' identities are public information . . . can be rebutted by showing that the harm to the plaintiff . . . exceeds the likely harm from concealment.'" Id. (quoting Doe v. City of Chicago, 360 F.3d 667, 669-70 (7th Cir. 2004)).

The factors weighing in favor of anonymity include:

(1) the extent to which the identity of the litigant has been kept confidential; *(2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases;* (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; *(5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified;* and *(6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.*

Id. (quoting Doe v. Provident Life & Accident Ins. Co., 176 F.R.D. 464, 467-68 (E.D.Pa. 1997) (emphasis added)).

The factors weighing against anonymity include:

(1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of the litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

Id. at 550 (quoting Doe v. Provident at 468).

A determination in this case turns on three of the above factors. First, the court must consider two factors that weigh in RHK's favor: (1) the basis upon which disclosure is feared and the substantiality of that basis; and (2) the undesirability of an adverse outcome and its effect on the party's willingness to pursue the case. RHK fears that he will be prosecuted under the Statutes if he reveals his identity. Given the arrests of Amaya and Mejia such fear is legitimate and the resulting harm if he were to be arrested would be significant. Additionally, an adverse outcome in this case could theoretically lead to an investigation and, ultimately, RHK's arrest.

The possibility of that outcome could be sufficient to deter him from pursuing his claim if he is forced to reveal his identity. However, if RHK has curtailed his currency transport business, as he claims, the possibility that he will be arrested and prosecuted is greatly diminished because there should be no opportunity for him to be caught violating the Statutes.

On the other hand, the court must consider whether the party seeking anonymity has illegitimate ulterior motives. On this point, the court has several concerns. First, this case was initiated by Amaya and Mejia, who are now facing state prosecution for violation of the Statutes. The constitutionality of the Statutes will likely be one of the central issues in their prosecution. Thus, the court is wary of making a determination which could affect the state proceeding unless it can be sure it is doing so on behalf of a real party whose allegations can be substantiated. Otherwise, there is no way to be sure that RHK is not a fictitious proxy for Amaya and Mejia, using this court to illegitimately interfere with the pending state proceeding.

Second, the court is concerned about RHK's method of transporting large sums of currency with nothing more than a handshake to secure the deal, and his stated practice of not asking his clients about the source or intended use of the currency being transported. Such a practice could be intentionally designed to allow RHK to remain willfully blind in the face of blatant criminal activity. If there are legitimate reasons for transporting large amounts of currency in the manner RHK describes, he should have nothing to hide. If, on the other hand, RHK is facilitating illegal activity, the court is not willing to protect his identity by allowing him to proceed anonymously.

There is a related consideration of importance. Applying <u>Younger v. Harris</u> principles, when a state court, particularly in a criminal proceeding, is already addressing constitutional principles and the parties have means of appealing its ultimate decision to the federal courts,

important federalism considerations suggest that federal courts should refrain from injecting themselves into the state controversy. Here, although it is unknown whether RHK is a front for Amaya and Mejia, allowing him to proceed would have the effect that <u>Younger v. Harris</u> was designed to avoid. <u>See</u> 401 U.S. 37 (1971).

Thus, the public interest in identifying RHK for these judicial proceedings outweighs his private interest in maintaining anonymity. For that reason, RHK's claims against Defendants State of New Jersey and Attorney General Paula Dow will be dismissed without prejudice and the court will grant RHK 30 days leave to amend his Complaint so he may properly identify himself. RHK's claims against the remaining Defendants are discussed below.

**D. <u>Dismissal of Claims Against Certain Defendants</u>:** RHK alleges no facts to substantiate a claim against Defendants Philip Mogavero, Sherri Wells, Martin Farrell, Cesar Huaman, and Chad Kaspar. Those Defendants were named as Defendants due to their involvement in the arrest and prosecution of Amaya and Mejia. They bear no relation to RHK's claim. Thus, RHK's complaint as it relates to Defendants Mogavero, Wells, Farrell, Huaman, and Kaspar will be dismissed with prejudice.

### III.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted. RHK's claims against Defendants State of New Jersey and Attorney General Paula Dow are dismissed without prejudice and RHK may submit an amended complaint curing, if he is able to do so, the defects in the Complaint within 30 days of this ruling. RHK's claims against Defendants Mogavero, Wells, Farrell, Huaman, and Kaspar are dismissed with prejudice.

The Court will enter an Order implementing this Opinion.

                                                s/ Dickinson R. Debevoise
                                                DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  October 15, 2010