**FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BELARMINO AMAYA, et. al,<br><br>                         Plaintiffs,<br><br>v.<br><br>STATE OF NEW JERSEY, et. al,<br><br>                         Defendants. | Civ. No. 10-0915 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

CAVANAGH & ASSOCIATES, P.C.
by:    Glenn L. Cavanaugh, Esq.
727 Raritan Road, Suite 202A
Clark, New Jersey 07066

J.H. BARR & ASSOCIATES, L.L.C.
by:    Jon Henry Barr, Esq.
21 Brant Avenue
Clark, New Jersey 07066

    *Attorneys for Plaintiff Richard H. Kress*

PAULA T. DOW, ATTORNEY GENERAL OF NEW JERSEY
by:    Jennifer S. Hsia, Deputy Attorney General
       Steven A. Yomtov, Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112

    *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

Remaining Plaintiff [1] Richard H. Kress brings this declaratory judgment action seeking to enjoin enforcement of the New Jersey money laundering statutes, N.J.S.A. 2C:21-25(a) and N.J.S.A. 2C:21-26 (the "Statutes") on the grounds that (1) the Statutes are unconstitutionally vague and overbroad, (2) they impose an impermissible mandatory presumption that shifts the burden of proof, and (3) they violate the Constitution's Commerce Clause. Opposing this action are the State of New Jersey and Paula Dow, Attorney General of the State of New Jersey, acting in their official capacities.

Presently before the Court are cross motions for summary judgment filed by Plaintiff and Defendants. For the reasons set forth below, Defendants' Motion is GRANTED. Plaintiff's Motion is DENIED.

## I. BACKGROUND

Plaintiff Kress alleges the following: He is a self-employed businessman and financial entrepreneur who routinely provides his clients with currency pickup, storage, and transportation services for a fee based on the amount of currency involved and the distance transported. (2VAC ¶ 15-16). Plaintiff provides these services on a confidential basis and deliberately keeps no records. Id. at ¶ 17. Nor does Plaintiff inquire as to the source of the currency or its intended use. Id. at ¶ 20. Plaintiff's services may involve transportation wholly within New Jersey, wholly outside of New Jersey, or from New Jersey to other states and vice-versa. Id. at ¶ 18. Plaintiff

---

[1] This action was originally filed on February 22, 2010 by Belarmino Amaya and Carlos Mejia, who were arrested and charged with money laundering after the State Police found $1,240,040 in United States currency in their car. Plaintiff Kress joined this action anonymously in an Amended Complaint filed on April 30, 2010. This Court subsequently dismissed the Amaya and Mejia Plaintiffs on Younger v. Harris, 401 U.S. 37 (1971) grounds. This Court then ruled that Plaintiff Kress could not proceed anonymously and dismissed the Amended Complaint with leave to refile. On November 12, 2010 Kress filed the current Second Verified Amended Complaint ("2VAC") as the sole Plaintiff.

claims that he does not transport currency if he knows that the currency at issue was derived from or is intended to be used for any illegal activity. Id. at ¶ 21. If Plaintiff were ever stopped by police while conducting a currency pickup or transfer he suspects that he would be arrested and prosecuted under the Statutes. Id. at ¶ 22. Thus, Plaintiff argues, the Statutes infringe upon his ability to conduct his currency transportation business. Out of fear of prosecution, he has suspended his operations. Id. at ¶ 35.

> N.J.S.A. 2C:21-25(a) states, in pertinent part:
>
>> A person is guilty of a crime if the person . . . transports or possesses property known or which a reasonable person would believe to be derived from criminal activity.
>
> N.J.S.A. 2C:21-26 states, in pertinent part:
>
>> For the purposes of [2C:21-25a], the requisite knowledge may be inferred where the property is transported or possessed in a fashion inconsistent with the ordinary or usual means of transportation of possession of such property and where the property is discovered in the absence of any documentation or other indicia of legitimate origin or right to such property.

On November 12, 2010, Plaintiff filed this action seeking an order enjoining enforcement of the Statutes as unconstitutional. On the basis of these facts, both Plaintiff and Defendants move for summary judgment.[2]

## II. DISCUSSION

### A. Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(a). For an issue to

---

[2] Defendants style their Motion as a "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b) or in the Alternative for Summary Judgment Pursuant to Fed. R. Civ. P. 56…." Since no evidence was submitted by either party and the issues before the Court are entirely those of law, it makes no difference whether Defendants' Motion is evaluated under Rule 12(b)(6) or Rule 56. For simplicity, it is treated as a cross-motion for summary judgment.

3

be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

In a motion for summary judgment, the moving party has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine issue of fact exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a genuine issue of material fact and do not merely suggest "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and determine the truth of the matter, but, rather, to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate.

In this case no facts are contested and what lies before the Court are entirely issues of statutory and constitutional adjudication. As such, summary judgment on all contested issues is

appropriate. See generally Methode Electronics, Inc. v. Elco Corp., 385 F.2d 138, 139 (3d Cir. 1967) (summary judgment "is appropriate when … only legal questions are to be resolved.").

**B.      Standing**

In a reprise of earlier briefing, Defendants argue that Plaintiff lacks standing to challenge the Statutes. "Constitutional standing has three elements, all of which must be met: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal nexus between that injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable judicial decision." Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 174-175 (3d Cir. 2001). Standing may not be assumed, for "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (U.S. 1992).

Defendants claim that Plaintiff cannot show an injury in fact because (1) "money laundering is neither a constitutional, nor in any way a legally-protected interest." (Def. Br. 9-10). Defendants further assert that "[a]lthough plaintiff claims to derive a profit and maintains a financial interest by engaging in a 'currency transportation service,' the secretive manner in which he conducts his business, virtually identical to that of bona fide money launders, is not an economic interest worthy of legal protection." Id. at 10.

However Defendants' argument begs the question. By demonstrating that the Statutes effectively criminalize his currency transportation service, Plaintiff has shown a straightforward economic injury to his business interest. Moreover, "palpable economic injuries have long been recognized as sufficient to lay the basis for standing, with or without a specific statutory provision for judicial review." Sierra Club v. Morton, 405 U.S. 727, 733-734 (1972). The illegitimacy of Plaintiff's conduct cannot be assumed for the purpose of determining whether he

5

has standing to challenge the very statute criminalizing it. By that standard no criminal statute, no matter how constitutionally infirm, would be subject to judicial review.

Defendants next argue that "there is no evidence that plaintiff has been threatened with prosecution" and that his fears of state prosecution are "imaginary and speculative…." (Def. Br. 12). This argument is also unavailing.

As stated in this Court's October 15, 2010 decision (Doc. No. 87), Revell v. Port Authority of New York and New Jersey[3] provides guidance on when a statute may be challenged by declaratory judgment based on a legitimate fear of prosecution. That case involved a challenge to New Jersey statutes prohibiting the unlicensed possession of handguns and hollow-point bullets. Revell at 115. Federal law "permits the transportation of firearms and ammunition through a state, even if possession of the firearms in that state would otherwise be illegal, so long as: 1) the firearms and ammunition are lawful in both the states of embarkation and destination; and 2) neither the firearms nor ammunition are readily accessible during transportation." Id. In Revell, The Association of New Jersey Rifle & Pistol Clubs, Inc. (the "Association") "filed a complaint seeking an injunction enjoining the Port Authority from enforcing the New Jersey Statutes against the Association's nonresident members who desire to travel through New Jersey with their firearms and ammunition." Id.

The court ruled that the Association had validly pled an injury in fact that was both concrete and imminent. Id. at 117. As the court stated, "[i]f it is Port Authority policy to arrest persons who are entitled to transport a firearm and ammunition pursuant to [federal law], and the

---

[3] 321 Fed. Appx. 113 (3d Cir. 2009).

Association's members are currently refraining from so transporting due to that policy, standing . . . exists."[4] The threat of arrest met the requirement that the injury be concrete and imminent.

In the present case, the arrests of Amaya and Mejia demonstrate that it is State Police policy to arrest people found carrying large amounts of currency in violation of the Statutes. Nor do Defendants deny that Plaintiff would be prosecuted if found in possession of large amounts of undocumented currency. Plaintiff is not require to demonstrate that he has been explicitly told that he will be prosecuted; the fact that his business conduct regularly gives rise to the threat of prosecution will suffice. Since Plaintiff is refraining from transporting currency out of fear of being arrested under an allegedly unconstitutional statute[5], his injury is both concrete and imminent under the ruling in Revell. Plaintiff thereby has standing to bring his claims.

### C. Overbreadth and Vagueness

Plaintiff argues that the Statutes are "overbroad and void for vagueness in general and as applied to [him]." (Pl. Br. 16).[6] Plaintiff contends that the "reasonable person" standard as used in N.J.S.A. 2C:21-25(a) is "unascertainable", "amorphous and undefined" and "virtually mandate[s]" that enforcement be "arbitrary." (Pl. Br. 19-20). In support of his position, Plaintiff cites to a host of public vagrancy and disorderly conduct statutes that were struck down for requiring individuals to give a "good account" or a "reasonable explanation" for their purpose in

---

[4] Note that in Revel, it would not have sufficed to categorize the Association members as "arms smugglers" or "illegal weapon importers" to deprive them of standing to challenge the statute.

[5] Of course, if the Statutes are found to be constitutional, Plaintiff will no longer have a legitimate legal right entitling him to standing. However since his standing will evaporate only after the case is decided on the merits, the question becomes largely metaphysical.

[6] Without seeking leave of Court, Plaintiff submitted two sets of motion papers in support of his motion for summary judgment (the "Cavanaugh" papers and the "Barr" papers). Substantial portions of the papers were identical, though some arguments appeared in one brief, but not the other. All references will be to the Cavanaugh papers unless specifically stated.

appearing on the street, and claims that the reasonable person standard "has been consistently rejected by the Supreme Court and state and federal courts as constitutionally infirm and void for vagueness." Id. at 20. Plaintiff further directs this court to a series of decisions striking down drug paraphernalia statutes that criminalize the sale of items if the seller "had reason to know" that they would be utilized in drug consumption. (Pl. Br. 23-24).

Plaintiff's overbreadth challenge is fatally flawed, as he has claimed no violation of his first amendment rights. Lutz v. City of York, Pa., 899 F.2d 255, 270-271 (3d Cir. 1990) ("Analysis of the plaintiffs' overbreadth claim is much simpler: the overbreadth doctrine has never been recognized outside the context of the First Amendment, and plaintiffs have raised no First Amendment issues on appeal."); See also U.S. v. Clark, 582 F.3d 607, 613 (5th Cir. 2009) ("overbreadth is relevant only to First Amendment challenges").

With respect to vagueness, we start from the strong presumption that lawfully enacted statutes are valid. I.N.S. v. Chadha, 462 U.S. 919, 944 (1983) ("We begin, of course, with the presumption that the challenged statute is valid. Its wisdom is not the concern of the courts; if a challenged action does not violate the Constitution, it must be sustained"). In addition, statutes should be read, if practicable, to avoid constitutional difficulties. Office of Senator Mark Dayton v. Hanson, 550 U.S. 511, 514 (2007) ("This reading is faithful, moreover, to our established practice of interpreting statutes to avoid constitutional difficulties.").

A vagueness challenge may invalidate a criminal statute on two independent grounds: (1) it may fail to provide adequate notice that will enable ordinary people to understand what conduct it prohibits; and (2) it may authorize or encourage arbitrary and discriminatory enforcement. City of Chicago v. Morales, 527 U.S. 41, 56 (1999). A law fails to meet the requirements of due process "if it is so vague and standardless that it leaves the public uncertain

as to the conduct it prohibits…." Id. (citation omitted). The conduct of the Plaintiff is critical to this analysis, for "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Hoffman, 455 U.S. at 495; see also Parker, 417 U.S. at 756 ("[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness").[7]

Plaintiff claims that the "reasonable person" standard is so "amorphous and undefined" as to create substantial uncertainty about what the law permits. But this argument is disingenuous. The structure of Plaintiff's enterprise, in which he transports large amount of currency from clients who require anonymity and an absence of record-keeping, falls squarely within the field of behavior that the New Jersey Legislature sought to criminalize. Indeed, "any fool would know that [Plaintiff's] conduct would be within the reach of the statute." Kolender v. Lawson, 461 U.S. 352, 370 (U.S. 1983) (White, J. dissenting).

Nor is the prohibition of this behavior surprising. Ordinary businesses do not deliberately avoid keeping records of their transactions, nor do they intentionally avoid learning how their customers earn money. Any person who—like Plaintiff— structures his enterprise in such a fashion is clearly aware that his or her conduct comes dangerously close to criminality. In such a circumstance it is not "unfair to require that one who deliberately goes perilously close to an area

---

[7] Though Plaintiff's conduct is the focus of the vagueness inquiry, it should be noted that some of the "legitimate" third-party conduct set out by Plaintiff in his brief is frequently the subject of criminal prosecutions. See U.S. v. Habbal, No. 01:05CR0832005, WL 2674999 (E.D. Va. October 17, 2005) (defendant convicted for running hawala branch); U.S. v. Elfgeeh, 515 F.3d 100 (2d Cir. 2008) (multiple defendants convicted for taking part in hawala). While hawala operations are not *per se* illegal, their ad hoc nature and failure to keep records often runs afoul of federal law. See e.g., 18 U.S.C.A. § 1960 ("Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both"). Whether the DDC's conduct might also violate the Statutes is beyond the scope of this opinion, as Plaintiff has no standing to assert claims on their behalf.

9

of proscribed conduct shall take the risk that he may cross the line." Boyce Motor Lines v. United States, 342 U.S. 337, 340 (1952). Nor is there any risk that the provider of such services would be caught unaware of the criminality of his actions. Maynard v. Cartwright, 486 U.S. 356, 361 (1988) ("Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk.").

Moreover, the Statutes' use of the "reasonable person would believe" standard as an alternative to knowledge, while occasionally problematic[8], is not impermissible here. As a threshold matter, the mere use of a "reasonable person" standard does not render a law unconstitutionally vague. U.S. v. Ragen, 314 U.S. 513, 523 (U.S. 1942); ("The mere fact that a penal statute is so framed as to require a jury upon occasion to determine a question of reasonableness is not sufficient to make it too vague to afford a practical guide to permissible conduct."); Panther v. Hames, 991 F.2d 576, 578 (9th Cir. 1993) (upholding Alaska statute defining criminal negligence as "a gross deviation from the standard of care that a reasonable person would observe in the situation").[9] Indeed, many other New Jersey criminal statutes also use some variant of the "reasonable person" or "reasonable belief" standard. See e.g., N.J.S.A. 2C:3-1 et seq. (use of force); N.J.S.A. 2C:11-3(c) (murder); N.J.S.A. 2C:12-10 (stalking);

---

[8] Some statutes which rely upon the "reasonable person", "reasonable belief", or "good account" standard have been struck down for overbreadth and/or vagueness where the inclusion renders the statute "so vague and standardless that it leaves the public uncertain as to the conduct it prohibits…." Morales, 527 U.S. at 56 (citation omitted). However this is not a mechanical rule. See e.g., Delaware Accessories Trade Ass'n v. Gebelein, 497 F.Supp. 289, 295 (D. Del. 1980) (constructive knowledge standard upheld); World Imports, Inc. v. Woodbridge Tp., 493 F.Supp. 428, 434 (D.N.J. 1980) (upholding "reason to know" standard in drug paraphernalia case). And in this case there is no real doubt about the Statutes' applicability to Plaintiff's business.

[9] See also United States v. Leon, 468 U.S. 897 (1984) (standard of objective reasonableness applicable in determining whether "good faith" exception to exclusionary rule has been satisfied).

N.J.S.A. 2C:13-1) (kidnapping); N.J.S.A. 2C:14-4 (lewdness); N.J.S.A. 2C:14-9 (covert observation of sexual contact); N.J.S.A. 2C:18-3(c) (peering into dwelling places). Other courts examining money laundering statutes similar to New Jersey's have found no problems with the use of "reason to know" as a predicate for criminal liability. State v. Lefevre, 193 Ariz. 385, 391 (App. 1998) ("We therefore reject Defendant's claim that the 'having reason to know' language of the money laundering statute is unconstitutionally vague.").

To the extent that the Statutes criminalize the knowing transportation of funds that are derived from criminal activity, they go little beyond the federal money laundering statutes and are clearly constitutionally proper. See 18 U.S.C.A. § 1956(2)(B). That the Statutes also criminalize transporting money under circumstances akin to ordinary criminal negligence does not render them unconstitutionally vague or a "trap for the unwary." Indeed, Plaintiff's characterization of his business suggests that he has deliberately structured it to facilitate potentially criminal activity while remaining willfully blind. The Statutes do not become vague or unconstitutional simply because they do not permit Plaintiff to continue to circumvent the law in this fashion.

### D. Presumption/Burden of Persuasion

Plaintiff also contends that the Statutes contain impermissible "presumptions" and impose a "reversed-burden of persuasion" on defendants (Pl. Br. 11). Specifically, Plaintiff claims that N.J.S.A has "codified a 'presumption of criminal knowledge', whereby the fact-finder is instructed that property is deemed as being criminal activity proceeds where the property is 'transported or possessed in a fashion inconsistent with the ordinary or usual means of transportation or possession of such property and where the property is discovered in the absence of any documentation… or other indicia of legitimate origin or right to such property.'"

11

(Pl. Br. 9-10). Plaintiff further argues that this "reversed-burden defense is prohibited by and in violation of Kress' [sic] Fifth and Fourteenth Amendment rights where the proofs to be produced in asserting his affirmative defenses are focused toward 'negating any element of the crime.'" (Pl. Br. 13).

"The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of… instruction is to determine the nature of the presumption it describes." Sandstrom v. Montana, 442 U.S. 510, 514 (1979). In Francis v. Franklin, the Supreme Court distinguished between "mandatory presumptions" and "permissive inferences" writing that:

> The court must determine whether the challenged portion of the instruction creates a mandatory presumption, or merely a permissive inference. A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

471 U.S. 307, 314 (1985).

A mandatory presumption violates the Due Process Clause if it "relieve[s] the State of the burden of persuasion on an element of an offense." Id. In contrast, a permissive inference "does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." Id. Indeed, a permissive inference violates the Due Process Clause "only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." Id. at 314-315.

In this case it is abundantly clear that the Statutes create a permissive inference rather than a mandatory presumption. As an initial matter, N.J.S.A. 2C:21-26 states that:

> For the purposes of [2C:21-25a], ***the requisite knowledge may be inferred*** where the property is transported or possessed in a fashion inconsistent with the ordinary or usual means of transportation of possession of such

> property and where the property is discovered in the absence of any documentation or other indicia of legitimate origin or right to such property. (emphasis added).

Similarly, the model jury instructions in use in connection with the statute explicitly state that the fact-finder is not required to presume knowledge of criminality upon a showing that money or property was transported in an unusual manner or the ordinary records were not kept. Rather, the instructions state that:

> You *may infer* that the defendant had this requisite knowledge if you find the following:
>
> (1) the property is transported or possessed in a fashion inconsistent with the ordinary or usual means of transportation or possession of such property; and
>
> (2) the property is discovered in the absence of any documentation or other indicia of legitimate origin or right to such property.
>
> An inference is a deduction of fact that may be drawn logically and reasonably from another fact or group of facts established by the evidence. ***Whether or not an inference should be drawn is for you to decide using your own common sense, knowledge and everyday experience.*** Ask yourselves is it probable, logical and reasonable. However, ***you are never required or compelled to draw an inference.*** You alone decide whether the facts and circumstances shown by the evidence support an inference and you are always free to draw or not to draw an inference. ***If you draw an inference, you should weigh it in connection with all the other evidence in the case***, keeping in mind that the burden of proof is upon the State to prove all the elements of the crime beyond a reasonable doubt.
>
> Model Jury Charge, Financial Facilitation of Criminal Activity (Money Laundering) (approved June 15, 2009) (Def. Ex. A) (emphasis added).

Moreover, the New Jersey Rules of Evidence categorically forbid instructing juries to presume elements of a crime.

> The judge *may not direct the jury to find a presumed fact against the accused.* If a presumed fact establishes an element of the offense, the judge may submit the question of the existence of the presumed fact to the jury upon proof of the basic fact but only if a reasonable juror on the evidence as a whole, including the evidence of the basic fact, could find the presumed fact beyond a reasonable doubt. If the presumed fact has a lesser effect, the question of its existence may be submitted to the jury provided the basic facts are supported by sufficient evidence

13

> or are otherwise established, unless the judge determines that reasonable jurors on the evidence as a whole could not find the existence of the presumed fact.
>
> N.J. R.E. § 303(b) (emphasis added).

Neither the statutory language nor the rules governing jury instructions suggest that N.J.S.A. 2C:21-26 creates a mandatory presumption that binds the fact-finder and shifts the burden of proof to the defendant. Instead the Statutes authorize a permissive inference that may be accepted or rejected by the fact-finder and must be considered together with all other evidence in determining whether the state has met its burden of proof.

The inference permitted is reasonable and does not fly in the face of common sense. Criminal enterprises are more likely to transport money or property by unusual means and to refrain from keeping proper records. While it would be improper for a jury to presume knowledge of criminality on the basis of these factors, it would not be improper for a jury to consider the manner in which property was held or the records associated with it as evidence of whether the possessor knew that the money or property was the proceeds of crime. As such, the potential inference offends neither "reason", "common sense", nor "Due Process…." Francis, 471 U.S. 314-315.

## E. Commerce Clause

Last, Plaintiff charges that the Statutes violate the Commerce Clause. Specifically, Plaintiff argues that "N.J.S.A. 2C:21-25a and 2C:21-26" require "the possessor of the currency" to "explain to the police the circumstances by which he came into possession of the currency and exhibit to law enforcement a license or permit of sorts attesting to the non-criminal source of and the right to possess the subject currency" and that "such circumstances and the requirements constitute an impermissible burden on and barrier to the free flow of interstate commerce thereby rendering N.J.S.A. 2C:21-25a and 2C:21-26 unconstitutional." (Pl. Barr Br. 16).

Pursuant to the Commerce Clause, a state "may not unreasonably burden or interfere with interstate commerce." Altus v. Carr, 255 F. Supp. 828, 837 (W.D. Tex. 1966), aff'd, 385 U.S. 35 (1966). In Freeman v. Corzine[10], the Court of Appeals set out the framework for analyzing dormant commerce clause challenges to state laws, writing:

> The party challenging the statute has the burden of proving that the statute is discriminatory, but if the plaintiff meets that burden, the State must demonstrate (1) that the statute serves a legitimate local interest, and (2) that this purpose could not be served as well by available nondiscriminatory means…
>
> If the plaintiff does not meet its burden of showing that the statute is discriminatory, we instead use the balancing test set forth in *Pike v. Bruce Church, Inc*, to determine whether the burdens on interstate commerce substantially outweigh the putative local benefits.
>
> Id. (internal citations omitted).

In this context, discrimination "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Management Authority, 550 U.S. 330, 338 (U.S. 2007). While Plaintiff asserts that the statute "discriminates against interstate commerce" (Pl. Barr. Br. 16) no credible argument is advanced suggesting that the statute differently burdens or benefits businesses by state of origin. As such, the Statutes "will be upheld unless the burden imposed on… commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).

The regulation of crime is an area in which states have traditionally enjoyed broad authority in regulating conduct for the public interest. Indeed, "the States, remain free to exercise their police powers to the fullest constitutional extent in defining and prosecuting crimes within their respective jurisdictions." U.S. v. Turkette, 452 U.S. 576, 587 (1981); see also State v. Passante, 225 N.J. Super. 439, 445 (Law Div. 1987) ("New Jersey has the right to fight

---

[10] Nos. 08-3268, 08-3302, 2010 WL 5129219, *7 (3d Cir. Dec. 17, 2010).
15

organized crime within its own borders"); U.S. v. Walker, 473 F.3d 71, 82 (3d Cir. 2007) ("courts should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes.") (internal citations omitted).

In enacting the Statutes, The New Jersey Legislature explicitly recognized the serious harms caused by money laundering, noting that "[i]n order to safeguard the public interest and stop the conversion of ill-gotten criminal profits, effective criminal and civil sanctions are needed to deter and punish those who are converting the illegal profits, those who are providing a method of hiding the true source of the funds, and those who facilitate such activities" and that "[t]o allow individuals or business entities to avoid responsibility for their criminal assistance in money laundering is clearly inimical to the public good." N.J.S.A. 2C:21-23(e). The local benefit to providing law enforcement authorities with the tools necessary to starve sophisticated criminal enterprises of the funding that they require to survive is enormously significant.

In addition, any harm to interstate commerce that the statute poses is minimal. Federal Banking and Trucking Regulations already impose significant documentation requirements on money and goods passing in interstate commerce. See 49 CFR § 373.101 (requiring detailed bills of lading for truck cargo); 12 CFR § 205.13 (requiring records of electronic money transfers). The Statutes impose no absolute requirement on record-keeping, and as a practical matter, any significant interstate business is required by federal regulations to keep more than ample records to avoid liability. Since any burden to interstate commerce is minimal and cannot substantially outweigh the significant benefits of the Statutes, Plaintiff's Commerce Clause challenge fails.

## III. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED. Plaintiff's Motion for Summary Judgment is DENIED. Plaintiff's Second Verified Amended Complaint is DISMISSED.

s/ Dickinson R. Debevoise<br>
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: February 10, 2011